# IN THE COURT OF APPEALS OF IOWA

No. 17-0498
Filed June 7, 2017

**IN THE INTEREST OF K.M., R.M., AND L.B.,**
**Minor Children,**

**L.M., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

A mother appeals from the juvenile court's order terminating her parental rights to her three children. **AFFIRMED.**

Raya D. Dimitrova of Carr & Wright, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

John P. Jellineck of Public Defender's Office, Des Moines, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals from the juvenile court's order terminating her parental rights to her three children: R.M., born in 2009; K.M., born in 2011; and L.B., born in 2015. She argues the State failed to prove the statutory grounds for termination by clear and convincing evidence, termination is not in the children's best interests, and the juvenile court should have granted her additional time to work toward reunification with her children. Upon our de novo review, we affirm.

### I.       Background Facts and Proceedings

The family has a history of involvement with the Iowa Department of Human Services (DHS) dating back to 2012. The family again came to the attention of DHS in February 2015 due to the mother's continued mental-health issues and inability to provide for her children's special needs. The mother had reported she was overwhelmed and could no longer care for R.M. and K.M. by herself. At the time, the father was incarcerated and the mother was unemployed and not attending all of the children's medical appointments. The mother was observed to have poor parenting skills and would become easily frustrated with the children, admitting to verbally lashing out at her children and physically disciplining them. The family home was dirty, and the children were unkempt and not potty-trained. R.M. had missed a lot of school and was regularly tardy.

In April 2015, the juvenile court adjudicated R.M. and K.M. children in need of assistance (CINA). Following the adjudication, the children remained in their mother's care and custody. Later that month, however, the mother requested the court remove the children from her care. R.M. and K.M. were

removed from the mother's custody and placed in family foster care. The court also entered a dispositional order continuing placement of the children outside of the mother's home due to the mother's unresolved mental-health issues and her inability to care for the children.

L.B. was born in October 2015. Shortly after her birth, the court ordered removal of L.B. from the mother's custody. L.B. was adjudicated CINA in December. The court noted the mother had been cooperative with services, had obtained suitable housing, was participating in visits with her children, and had reported engaging in mental-health services. However, she struggled with transportation and meeting obligations outside of her home.

In April 2016, the juvenile court held a permanency hearing. The court noted the mother had engaged in mental-health therapy and medication management but not consistently. She also had not attended the children's medical appointments consistently and at times had not shown an interest in R.M.'s serious medical needs. However, the mother had made progress in that she had housing, was employed, and had family support. She was also exercising supervised visits with her children.[1] Following this hearing, the court granted the mother an additional six months to work toward reunification but ordered the children remain in their placement due to the mother's unresolved mental-health issues and the father's unresolved substance-abuse problems.

---

[1] The court noted, however, the supervised visits had been moved from the mother's home after concerns were raised the mother was abusing alcohol. The mother became upset the visits were moved and made threats toward the workers involved in the case. DHS temporarily suspended the mother's visits with her children as a result of her threats. The court also noted the mother had threatened to kidnap her children and take them out of state.

In July, the mother informed DHS she was not able to function well at that time and needed to work on resolving her own problems before she could take care of her children. Following a permanency review hearing in August, the court modified the permanency goal to termination of parental rights. The court noted the mother had completed a substance-abuse evaluation regarding her use of alcohol. Outpatient treatment was recommended, but the mother only attended two treatment sessions before being unsuccessfully discharged from the program. The court also noted the mother had lost her housing due to an inability to pay her rent after losing her employment.

In September, the State filed a petition to terminate the mother's parental rights, alleging the grounds for termination under Iowa Code section 232.116(1)(d), (e), (h), (i), (k), and (*l*) (2016). The State subsequently amended the petition to include paragraph (f) as an additional ground for termination. The juvenile court held a termination hearing on dates in November and December 2016. In March 2017, the juvenile court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(d) and (e) as to all three children and paragraph (h) as to L.B.[2] The mother appeals.

## II. Scope and Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa

---

[2] The father of R.M. and K.M. voluntarily consented to the termination of his parental rights; he does not appeal. The juvenile court also terminated the parental rights of any unknown father of L.B.

2014)). Our primary consideration is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

### III. Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the State established statutory grounds for termination, we consider whether termination is in the children's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

#### A. Statutory Grounds

The mother argues the State failed to prove the statutory grounds for termination. When a court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). "Evidence is considered clear and convincing 'when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."'" *In re M.W.*, 876 N.W.2d at 219 (alteration in original) (citation omitted).

The State amended the petition to terminate parental rights to allege Iowa Code section 232.116(1)(f) as an additional ground for termination. The juvenile court acknowledged the State's amendment in its order; however, the court did not make any conclusions with regard to this ground. Nevertheless, "[w]e are

obliged to affirm an appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its holding." *Id.* at 221 (alteration in original) (quoting *State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008)). Indeed, "[i]t is well-settled law that a prevailing party can raise an alternative ground for affirmance on appeal without filing a notice of cross-appeal, as long as the prevailing party raised the alternative ground in the district court." *Id.* (citation omitted). The State properly raised paragraph (f) as a ground for termination before the juvenile court. Thus, we are able to consider that paragraph as a ground for termination with regard to R.M. and K.M.

Paragraphs (f) and (h) are substantially similar; thus, we will examine these grounds together, analyzing the elements of paragraph (f) with regard to R.M. and K.M. and paragraph (h) as to L.B. Iowa Code section 232.116(1)(f) provides the court may terminate parental rights if the court finds the State has proved by clear and convincing evidence the child (1) is four years of age or older; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. Under section 232.116(1)(h), the court may terminate parental rights if the court finds the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and

(4) cannot be returned to the parent's custody at the time of the termination hearing.

The first three elements of both of these grounds have clearly been met. At the time of the termination hearing, R.M. and K.M. were over the age of four and L.B. was age three or younger. All three children had been adjudicated CINA. And all three children had been removed from their mother's custody for the requisite time periods with no trial periods at home. The mother does not dispute these findings. Instead, the mother claims the State failed to prove the children could not be returned to her custody at the time of the hearing.

All three children have serious medical and developmental needs that the mother struggles to understand.[3] The juvenile court ordered the mother to attend the children's medical and therapeutic appointments so that she could become familiar with their needs and learn how to care for them. However, the mother did not consistently attend the children's appointments. The mother also did not consistently participate in her own mental-health treatment and never completed the court-ordered psychiatric evaluation. At the termination hearing, the mother admitted she still struggled with mental-health issues.

Further, although DHS did not have any remaining concerns about the mother's alcohol use, the mother did not have stable housing or employment. She also did not have a driver's license or reliable transportation. At the time of the hearing, R.M. and K.M. had been out of the mother's custody for almost nineteen months, and L.B. had been out of her custody for over a year. The

_____

[3] The record shows the mother ended visits early when she became frustrated with her children, and at one point, the mother became so frustrated with one of her children that she requested only the other two children come to her next visit.

mother received numerous services aimed at reunification during that time, in addition to the services she had received dating back to 2012 when DHS first became involved with the family. The mother never progressed to unsupervised visits with her children and was participating in fully supervised visits with her children twice weekly for a total of three or four hours a week. She did not take responsibility for the situation she and her children were in and could not understand why DHS had concerns about her ability to care for her children independently.

Based upon our de novo review of the record, we find the State proved by clear and convincing evidence the mother's children could not be returned to her custody at the time of the termination hearing. Therefore, we conclude the requirements of Iowa Code section 232.116(1)(f) have been met as to R.M. and K.M. and the requirements of section 232.116(1)(h) have been met as to L.B.

### B. Best Interests

The mother next contends termination of her parental rights was not in the children's best interests under Iowa Code section 232.116(2). Even if a statutory ground for termination is met under section 232.116(1), a decision to terminate must still be in the best interests of the children under section 232.116(2). *In re M.W.*, 876 N.W.2d at 224.

In determining whether termination of a parent's parental rights is in a children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "Insight for the determination of [the

children's] long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)).

We acknowledge the mother has great family support. However, as discussed above, the mother has difficulty understanding and addressing her children's special medical and developmental needs despite years of services. The children were removed from their mother's care because she was unable to care for them by herself. She has not shown progress in this regard. She is inconsistent in her participation in her children's medical and therapeutic appointments. She becomes easily frustrated with them during visits, causing her to end the visits early. In all the time the children were removed from the mother's care, she never progressed to unsupervised visits. Additionally, she continues to struggle with her own serious mental-health issues. We cannot ask these children to continuously wait for their mother to become a stable parent. *See In re D.W.*, 791 N.W.2d at 707; *see also In re A.B.*, 815 N.W.2d at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). The children are thriving in their current placements and are having their many needs met. Termination of the mother's parental rights is in R.M., K.M., and L.B.'s best interests.

### C. Additional Time

Finally, the mother argues the juvenile court should have granted her additional time to work toward reunification with her children. Under Iowa Code

section 232.104(2)(b), a court may authorize a six-month extension if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

We must now view this case with a sense of urgency. *See In re C.B.*, 611 N.W.2d at 495; *see also In re A.B.*, 815 N.W.2d at 777 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010))). The juvenile court gave the mother an additional six months at the permanency hearing in April 2016. The mother did not make any more progress. She had not shown she was able to meet her children's special needs or her own mental-health needs. She also did not have stable housing or employment. "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). These children need and deserve permanency and stability. *See In re D.W.*, 791 N.W.2d at 707. We are not persuaded the need for removal would no longer exist at the end of six months. *See* Iowa Code § 232.104(2)(b).

## IV.    Conclusion

We have carefully reviewed the record, the briefs of the parties, and the juvenile court's ruling. Upon our de novo review, we conclude the State proved the statutory grounds for termination of the mother's parental rights by clear and convincing evidence and termination is in the children's best interests. We

further find the juvenile court correctly denied the mother's request for an additional six months to work toward reunification. Accordingly, we affirm.

**AFFIRMED.**